IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUESTONE INNOVATIONS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>NICHIA CORP. and NICHIA AMERICA CORP.,<br><br>    Defendants._____/ | No. C 12-00059 SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

Currently before the Court is the Nichia defendants' motion under Rule 12(b)(1) to dismiss plaintiff's first amended complaint for lack of standing. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter suitable for disposition without oral argument and therefore VACATES the hearing currently scheduled for April 26, 2013. Having carefully considered the papers submitted, the motion is GRANTED IN PART and DENIED IN PART, for the reasons set forth below.

**BACKGROUND**

United States Patent No. 6,163,557 ("the '557 patent") was issued on December 19, 2000 and originally assigned to Xerox Corp. First Amended Complaint ("FAC"), Ex. A. The '557 patent is for a technology, the fabrication of group III-V nitride films on mesas, that can be used in both light-emitting diodes ("LEDs") and laser diodes ("LDs"). *Id.*

On September 30, 2006, Xerox and its wholly owned subsidiary, Palo Alto Research Center Incorporated ("PARC"), granted an exclusive field of use license to Thompson Licencing Incorporated in a License Agreement. Decl. of Brian P. Egan in Supp. of Nichia's Mot. to Dismiss ("Egan Decl."), Ex. 2. Thompson was granted "an exclusive, sublicensable, worldwide license under the ['557 patent]

to make, have made, use, sell, offer for sale, otherwise dispose of, and import LICENSED PRODUCTS." *Id.*, Ex. 2 at 3. The License Agreement defines "LICENSED PRODUCTS" as Optical Media Storage Devices and their Components. *Id.*, Ex. 2 at 1. An Optical Media Storage Device is an "apparatus for reading, recording or reproducing information on an optical rotating rigid substrate using one or more laser diodes operating at a wavelength greater than 390nm, and including, for example, current and future generation CD (Compact Disk) or DVD (Digital Video Disk) players, recorders, drives and game consoles." *Id.* The License Agreement also grants Thompson the exclusive right to sue for infringement of the '557 patent for Optical Media Storage Devices or Components. *Id.*, Ex. 2 at 3. Importantly, Thompson was *not* granted a license for products that use LEDs; its license only covers LDs.

On May 19, 2010, Bluestone purchased the '557 patent from Xerox and PARC through a Patent Purchase and Assignment Agreement ("Purchase Agreement"). Egan Decl., Ex. 3. Through the Purchase Agreement, Bluestone acquired "all powers, benefits, causes of action, and remedies relating thereto [the '557 patent] (including the sole and exclusive right to sue for past, present and future infringement thereof)." *Id.*, Ex. 3 at 3. The assignment was "expressly made subject to Existing Encumbrances," including the Thompson field of use license. *Id.* Additionally, Bluestone "covenant[ed] not to sue under any Patent for . . . any device that has integrated therein Optical Media Storage Devices or Components (such as for example, a general purpose computer with an Optical Media Storage Device integrated as a fixed part therein) ('Combination Products')." *Id.*, Ex. 3 at 5. Thus, the '557 patent was sold to Bluestone, but Thompson's exclusive license for Optical Media Storage Devices using laser diodes remained intact, and Bluestone covenanted not to bring patent infringement suits against those devices or combination products incorporating those devices.

Bluestone initially filed this suit in the Eastern District of Texas, alleging that defendants were infringing the '557 patent. In January 2012, the case was transferred to this District and initially assigned to Chief Judge Ware. On July 10, 2012, the Chief Judge denied defendants' motion to dismiss for lack of standing, rejecting an argument similar to Nichia's current motion. The case was reassigned to the undersigned district judge in September, 2012. At a case management conference on November

2

30, 2012, the Court permitted discovery on the issue of standing and set a schedule for the motion to dismiss.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. *See* Fed. R. Civ. Pro. 12(b)(1). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citation omitted). "In resolving a Rule 12(b)(1) factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *In re Digimarc Corp. Derivative Litigation*, 549 F.3d 1223, 1236 (9th Cir. 2008) (citation omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Pub'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no presumption of truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

Standing is a threshold issue faced before reaching substantive matters. *See Stoianoff v. Montana*, 695 F.2d 1214, 1223-24 (9th Cir. 1983). The constitutional standing requirement derives from Article III, Section 2 of the United States Constitution, which restricts adjudication in federal courts to "Cases" and "Controversies." *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). The constitutional prerequisites for standing are (1) an injury in fact which is concrete and not conjectural; (2) a causal connection between the injury and defendant's conduct or omissions; and (3) a likelihood that the injury will be redressed

3

by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The absence of any one element deprives a plaintiff of Article III standing and requires dismissal. *See Whitmore v. Federal Election Comm'n*, 68 F.3d 1212, 1215 (9th Cir. 1995).

**DISCUSSION**

Only a patentee or successor in title may bring an action for infringement. 35 U.S.C. § 281; *Vaupel Textilmaschinen v. Meccanica Euro Italia*, 944 F.2d 870 (Fed. Cir. 1991). "[A] patent may not have multiple separate owners for purposes of determining standing to sue." *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010) (citation omitted). Thus, an exclusive licensee has standing to sue in its own name without joining the patent owner only if "all substantial rights" in the patent have been transferred to the licensee. *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007) (citation omitted). "Either the licensor did not transfer 'all substantial rights' to the exclusive licensee, in which case the licensor remains the owner of the patent and retains the right to sue for infringement, or the licensor did transfer 'all substantial rights' to the exclusive licensee, in which case the licensee becomes the owner of the patent for standing purposes and gains the right to sue on its own." *Alfred E. Mann Found.*, 604 F.3d at 1359-60. The holder of only an exclusive field of use license may not sue in its own name because "allowing a licensee, even one with exclusive rights to the patent for a particular field of use, to sue in its own name alone poses a substantial risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement." *Int'l Gamco*, 504 F.3d at 1278 (citation omitted). Thus, the "prudential standing requirement compels an exclusive licensee with less than all substantial rights, such as a field of use licensee, to join the patentee before initiating suit." *Id.* (citations omitted).

Nichia argues that Bluestone lacks constitutional and prudential standing to assert claims of infringement of the '557 patent. First, it argues that Bluestone cannot bring infringement suits against Optical Media Storage Devices and Combination Products because of covenants in the Purchase Agreement and Thomson's License Agreement. Second, it argues that Bluestone cannot bring suits against LED devices without joining Thompson because this allows separate cases to be brought under

4

the same patent but for different products, and creates a risk of conflicting interpretations of the same patent.

### I. Infringing Optical Media Storage Devices and Combination Products

As Chief Judge Ware found, the right to sue to enforce the '557 patent was effectively transferred from Xerox to Bluestone, and Thomson was never granted rights in the '557 patent beyond an exclusive field of use license. Docket No. 228 at 3. In "ascertain[ing] the intention of the parties to the license agreement and examin[ing] the substance of what was granted," the Court finds that the Purchase Agreement transferred all substantial rights to the '557 patent to Bluestone. *Alfred E. Mann Found.*, 604 F.3d at 1359. Accordingly, Bluestone as the patent owner may assert infringement claims without being required to join Thompson, but Thompson as the licensee would be required to add Bluestone in an infringement suit. *See id.*

However, under Thompson's license agreement, Thompson has the exclusive right to sue infringing Optical Media Storage Devices.[1] Additionally, in the '557 patent Purchase Agreement, Bluestone covenanted not to bring infringement suits against Optical Media Storage Devices or Combination Products. Nichia argues that Bluestone therefore has no standing to bring claims against Optical Media Storage Devices or Combination Products.

Bluestone responds that it is not suing Nichia for infringing products that would constitute Optical Media Storage Devices or Combination Products. Instead, it is focusing its enforcement efforts on products that use LEDs. Oppo. 2, 4-5. At the hearing before Chief Judge Ware, Bluestone's counsel asserted that it was "not going to assert a claim for infringement against the Nichia products that fall within the [Thompson] field of use [license]." Decl. of David Mahalek in

Supp. of Bluestone's Oppo. ("Mahalek Decl."), Ex. 5 at 18. Under further questioning, Bluestone's counsel explained that he was making that representation "as an officer of the court." *Id.*

---

[1] Bluestone concedes that Thompson has the sole right to sue infringing Optical Media Storage Devices. Bluestone does not concede who has the right to sue infringing Combination Products, but (to avoid this question) represents that it is not advancing a claim against any Combination Products. Thus, the Court need not decide the issue of who has standing to sue Combination Products.

After Bluestone's concessions, the only issue is whether its assertion is sufficient to resolve the standing issue. Bluestone's complaint does not confine its allegations to LED products. The first amended complaint alleges that the Nichia defendants "have been and are engaged in the manufacture, importation, offering for sale, and/or sale of LEDs, laser diodes, and other optical semiconductor devices such as nitride-based semiconductors, for example model no NS6W083A Power LED. . . which lead to and did cause direct and indirect infringement of the ['557] patent." FAC ¶ 27. This broad claim could include either Optical Media Storage Devices or Combination Products. The Court finds that, to the extent that the complaint encompasses products as to which Bluestone does not have standing to assert infringement claims, it should be dismissed. Clarifying the scope of the claims in the complaint, instead of relying on counsel's statements to the Court, will aid in narrowing the issues for discovery and trial.

If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). The Court finds that Bluestone could easily cure the defects in the complaint so that it has standing over all of the claims it asserts.

Accordingly, the Court GRANTS the Nichia defendants' motion to dismiss for lack of standing with respect to any claims for infringing Optical Media Storage Devices or Combination Products, and DISMISSES WITH LEAVE TO AMEND the first amended complaint.

## II.    Infringing LED Products

The Nichia defendants also argue that Bluestone lacks prudential standing to assert claims for the LED products, even if it is not contractually barred from asserting these claims. They argue that Bluestone and Thompson could assert the '557 patent against different products and could potentially obtain conflicting claim constructions or jury verdicts, and if Thompson is not joined in this litigation, then the claim construction of the '557 patent will not be subject to collateral estoppel. Therefore, they argue, prudential reasons require either joining Thompson or dismissing the case.

The Court finds this argument unpersuasive. First, if Thompson sues Nichia, it will be required to join Bluestone as a necessary plaintiff. *Int'l Gamco*, 504 F.3d at 1278 (holding that the prudential standing requirement compels an exclusive licensee to join the patent owner before initiating suit). Therefore, because Bluestone will be a party to any suit that Thompson initiates, it will be collaterally estopped from relitigating an issue that received a final judgment on the merits.

Second, the cases that Nichia relies on for the proposition that a patent owner must join an exclusive licensee to sue for infringement are distinguishable. In *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1343-44 (Fed. Cir. 2006), the Federal Circuit found that one of the plaintiffs, Contour, was the owner of the patent and therefore had standing to sue. It remanded the case to resolve a factual dispute about the date Aspex Eyewear became an exclusive licensee, to determine whether Aspex should have been joined as a necessary party. *Id.* at 1344. However, Aspex's license was for the exclusive right to make, use, and sell *all* products covered by the patent and the right to sue for infringement of the patent, but only for a limited time period. *Id.* at 1338. Therefore, the allegedly infringing products at issue in *Aspex* would have been covered by the license, unlike the field of use license in the instant case.

Here, Thompson's field of use license is exclusively for Optical Media Storage Devices. Thompson has no right to assert an infringement claim against LEDs. Therefore, it is not a necessary party to Bluestone's action. Indeed, this case is similar to *Alfred E. Mann Found.*, wherein the patent owner sued an allegedly infringing manufacturer after the exclusive licensee declined to file suit. The Federal Circuit in *Alfred E. Mann Found.* found that the plaintiff as the patent owner had standing to file the suit. It explained *Aspex* as holding that if the court finds the licensor to be the patent owner, then "the licensor may sue, but the licensee *alone* may not." *Alfred E. Mann Found.*, 604 F.3d at 1360 (emphasis added). By implication, in this case, patent owner Bluestone may proceed against defendants alone, but if exclusive licensee Thompson brought a suit, it would be required to join Bluestone.

Accordingly, the Court DENIES the Nichia defendants' motion to dismiss as to the allegedly infringing LED products.

7

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART defendants' motion, and DISMISSES WITH LEAVE TO AMEND plaintiff's first amended complaint. Docket No. 265. Any amended complaint must be filed by May 3, 2013

.

**IT IS SO ORDERED.**

Dated: April 22, 2013

SUSAN ILLSTON
United States District Judge