1  DAVIS WRIGHT TREMAINE LLP
   MARTIN L. FINEMAN, Bar No. 1104413
2  Email: martinfineman@dwt.com
   505 Montgomery Street
3  Suite 800
   San Francisco, CA 94111
4  Telephone: (415) 276-6575
   FACSIMILE: (415) 276-6599
5
6  Counsel for Plaintiff
   Bluestone Innovations LLC
7  *See signature pages for full list of counsel*

8

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                   SAN FRANCISCO DIVISION

12

| | |
|---|---|
| BLUESTONE INNOVATIONS LLC, | Case No. 3:12-cv-00059-SI (EDL) |
| Plaintiff, | |
| v. | |
| NICHIA CORPORATION; NICHIA AMERICA CORPORATION, | |
| Defendants. | |
| BLUESTONE INNOVATIONS LLC, | Case No. 3:13-cv-01770-SI (EDL) |
| Plaintiff, | **BLUESTONE INNOVATIONS LLC'S OPENING CLAIM CONSTRUCTION BRIEF** |
| v. | |
| LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., BEST BUY CO., INC., BEST BUY STORES, L.P., BESTBUY.COM, LLC, VIZIO, INC. and ACER, INC., ACER AMERICA CORPORATION, | |
| Defendants. | |

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................................1

II.    THE PATENTED TECHNOLOGY .....................................................................................2

III.   THE ACCUSED INSTRUMENTALITIES .........................................................................5

IV.    APPLICABLE LEGAL STANDARDS ...............................................................................6

V.     BLUESTONE'S CLAIM CONSTRUCTION ARGUMENTS.............................................8

       A.     "mesa" .......................................................................................................................9

       B.     "upstanding mesa" ...................................................................................................12

       C.     "a top surface" .........................................................................................................14

       D.     "film on the top surface of at least one mesa"........................................................16

       E.     "crack planes of the epitaxial film"........................................................................18

       F.     "the at least one mesa including surfaces oriented along crack planes" .................20

       G.     "at least one mesa comprises a plurality of mesas" ................................................21

VI.    CONCLUSION...................................................................................................................23

**TABLE OF AUTHORITIES**

**Page**

**FEDERAL CASES**

*3M Innovative Prop. Co. v. Avery Dennison Corp.*,
   350 F.3d 1365 (Fed. Cir. 2003)..................................................................7

*Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*,
   345 F.3d 1318 (Fed. Cir. 2003)..................................................................7

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
   672 F.3d 1335 (Fed. Cir. 2012)................................................................13

*Bd. Of Regents of the Univ. of Tex. Sys. v. BenQ Am. Corp.*,
   533 F.3d 1362 (Fed. Cir. 2008)................................................................13

*Biagro W. Sales, Inc. v. Grow More, Inc.*,
   423 F.3d 1296 (Fed. Cir. 2005)................................................................22

*Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*,
   725 F.3d 1341 (Fed. Cir. 2013)................................................................22

*Dayco Prods. v. Total Containment, Inc.*,
   258 F.3d 1317 (Fed. Cir. 2001)................................................................22

*Desper Prods., Inc. v. QSound Labs*,
   157 F.3d 1325 (Fed. Cir. 1998)..................................................................8

*Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*,
   672 F.3d 1270 (Fed. Cir. 2012)..............................................................7, 8

*E-Pass Techs., Inc. v. 3Com Corp.*,
   473 F.3d 1213 (Fed. Cir. 2007)..................................................................6

*Ecolab, Inc. v. Envirochem, Inc.*,
   264 F.3d 1358 (Fed. Cir. 2001)................................................................16

*Eolas Techs., Inc. v. Microsoft Corp.*,
   399 F.3d 1325 (Fed. Cir. 2005)..................................................................8

*Gemstar-TV Guide Int'l, Inc. v. ITC*,
   383 F.3d 1352 (Fed. Cir. 2004)..................................................................8

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
   540 F.3d 1337 (Fed. Cir. 2008)................................................................22

*Innogenetics, N.V. v. Abbott Labs.*,
   512 F.3d 1363 (Fed. Cir. 2008)..................................................................7

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
  256 F.3d 1323 (Fed. Cir. 2001)..........................................................................6

*Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*,
  445 F.3d 1348 (Fed. Cir. 2006)..........................................................................5

*Linear Tech. Corp. v. Int'l Trade Comm'n*,
  566 F.3d 1049 (Fed. Cir. 2009)......................................................................8, 14

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995) (en banc)..............................................................6

*Mass. Inst. of Tech. v. Abacus Software*,
  462 F.3d 1344 (Fed. Cir. 2006)..........................................................................5

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
  474 F.3d 1323 (Fed. Cir. 2007)..........................................................................1

*McCarty v. Lehigh Valley R. Co.*,
  160 U.S. 110 (1895)............................................................................................1

*Omega Eng'g, Inc. v. Raytek, Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003)..........................................................................8

*On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*,
  386 F.3d 1133 (Fed. Cir. 2004)........................................................................18

*Ormco Corp. v. Align Tech., Inc.*,
  463 F.3d 1299 (Fed. Cir. 2006)..........................................................................8

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc)..................................................6, 7, 8

*Rhine v. Casio, Inc.*,
  183 F.3d 1342 (Fed. Cir. 1999)........................................................................22

*SRI Int'l v. Matsushita Elec. Corp.*,
  775 F.2d 1107 (Fed. Cir. 1985)..........................................................................7

*SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*,
  336 F.3d 1298 (Fed. Cir. 2003)..........................................................................8

*Transmatic, Inc. v. Gulton Indus., Inc.*,
  53 F.3d 1270 (Fed. Cir. 1995)..........................................................................16

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996)..........................................................................18

*Z4 Techs., Inc. v. Microsoft Corp.*,
  507 F.3d 1340 (Fed. Cir. 2007)....................................................................7, 12

## I.   **INTRODUCTION**

Plaintiff Bluestone Innovations LLC ("Bluestone") has charged Defendants Nichia Corporation and Nichia America Corporation (collectively, "Nichia"), LG Electronics, Inc. and LG Electronics U.S.A., Inc. (collectively "LGE"), Best Buy Co., Inc., Best Buy Stores, L.P., and BestBuy.com, LLC (collectively "Best Buy"), VIZIO, Inc. ("Vizio"), and Acer America Corp. ("Acer") (collectively "Defendants") with infringement of claims 1, 9 and 23 of U.S. Patent No. 6,163,557 ("the '557 patent"). The parties previously submitted a Joint Claim Construction Statement which identifies the disputed terms of the asserted claims of the '557 patent, and provides a brief overview of the parties' competing interpretations thereof.  (Dkt. No. 353, Case No. 3:12-cv-00059-SI (EDL); Dkt. No. 156, Case No. 3:13-cv-01770-SI (EDL)).  Bluestone now submits its opening claim construction brief.

Federal Circuit law requires that patent claims be construed based upon the plain and ordinary meaning of the claim terms themselves, consistent with the intrinsic evidence of record.  Bluestone has proposed constructions that abide by this legal framework.   In contrast, Defendants have proposed constructions that are not supported by the intrinsic evidence of record, much less the plain and ordinary meaning of the claims themselves.  Defendants' proposed claim constructions – all of which are sought for the sole purpose of supporting Defendants' non-infringement contentions – are replete with violations of the basic canons of claim construction, particularly with respect to Defendants' improper attempts to have features of preferred embodiments from the specification of the '557 patent read into the claims as limitations, even though those features are nowhere present in the claims.   The Supreme Court denounced this very practice more than a century ago:

> [W]e know of no principle of law which would authorize us to read into a claim an element which is not present, for the purpose of making out a case of novelty or infringement.  The difficulty is that if we once begin to include elements not mentioned in the claim, in order to limit such a claim ... we should never know where to stop.

*McCarty v. Lehigh Valley R. Co.*, 160 U.S. 110, 116 (1895).  Indeed, "patent coverage is not necessarily limited to inventions that look like the ones in the figures.  To hold otherwise would be to import limitations onto the claim from the specification, which is fraught with danger." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1333 (Fed. Cir. 2007) (internal citations and quotations

1    omitted).   Defendants' proposed claim constructions violate these fundamental principles, and should

2    accordingly be rejected by the Court.

3    **II.    THE PATENTED TECHNOLOGY**

4           The '557 patent, entitled "Fabrication of Group III-V Nitrides on Mesas," issued on December 19,

5    2000, based upon an application that was filed with the United States Patent and Trademark Office on

6    May 21, 1998.  (Declaration of David J. Mahalek in Support of Bluestone's Opening Claim Construction

7    Brief ("Mahalek Decl.") Ex. A, '557 patent).  The '557 patent teaches that, at the time of the invention, it

8    was common for group III-V nitride semiconductor films to be epitaxially "grown on" (*i.e.*, deposited or

9    fabricated on) sapphire semiconductor substrates for use in various optoelectronic applications, including

10   light-emitting diodes ("LEDs").  (*Id.* at 1:37-40).  In the world of semiconductor physics, the term "group

11   III-V nitride" refers to a compound that is formed from the chemical elements of Group IIIA of the

12   periodic table (also known as Group 13) and Nitrogen, which is a Group VA element of the periodic

13   table (also known as Group 15), as shown below:



27   One example of a group III-V nitride that is referenced throughout the '557 patent is Gallium Nitride, or

28   "GaN" (Gallium or "Ga" being a Group IIIA element, and Nitrogen or "N" being a Group VA element).

As described in the specification of the '557 patent, one of the problems that persisted in prior art semiconductor structures of this sort (*i.e.*, group III-V nitride films epitaxially grown on sapphire substrates) was the formation of cracks in the group III-V nitride films.  (Mahalek Decl. Ex. A, '557 patent, at 1:60-65).  Such cracks resulted from the presence of high thermal stresses in the films, the high thermal stresses being the by-product of a thermal expansion mismatch that inherently exists between the films and the sapphire substrate, which places the films in tension.  (*Id.* at Abstract and 2:1-3).  The inventors of the '557 patent developed a solution to this problem.

At a fundamental level, the patented technology pertains to structures having group III-V nitride films fabricated on "mesas."  As described in the '557 patent, "mesas" are projections that are formed by patterning a semiconductor substrate.  The specification of the '557 patent teaches that mesas may be formed in or on a substrate material (commonly sapphire) by a variety of conventional lithography and chemical etching techniques, or by use of a laser etching process.  (*Id.* at 6:40 – 7:7).  Regardless of the specific technique being utilized, the end result is the formation of mesas (*i.e.*, projections) by virtue of the removal of substrate material which otherwise would have existed.  A general illustration of this structural relationship is shown below:



Figure 1 of the '557 patent, which illustrates a preferred embodiment of the claimed invention, provides a perspective view of a collection of mesas (identified generally by reference item 10) that have been patterned into a sapphire substrate (identified generally by reference item 20):



(*Id.* at FIG. 1 and 4:24-26).  While the preferred embodiment of the claimed invention illustrated above depicts the mesas as having a rectangular shape, the specification of the '557 patent makes clear that the mesas may take on a variety of structural configurations, including but not limited to various polygonal shapes.  (*Id.* at 2:26-29).

The aforementioned process of patterning mesas into a substrate leads to the formation of upper surfaces (relative to the newly-formed "floor" of the substrate material) which otherwise would not exist. These upper surfaces collectively constitute reduced area surfaces, again with reference to the planar substrate surface, which would otherwise exist absent the formation of mesas.  A general illustration of this structural relationship is shown below:

 

overhead view of
non-patterned sapphire
substrate having planar
upper surface

overhead view of
patterned sapphire
substrate having reduced
area upper surfaces

The image shown below depicts an early attempt by the inventors to grow a group III-V nitride on the top surface of a sapphire substrate that had been patterned with mesas.



(Mahalek Decl. Ex. B, DUNN000017, image provided by inventor Clarence Dunnrowicz, with colored markings added by Bluestone).  The inventors of the '557 patent determined that by growing group III-V nitride films on such reduced area sapphire surfaces (as opposed to growing such films on a planar sapphire surface), the thermal film stresses that were inherent to the aforementioned prior art structures could be reduced, thereby leading to a reduction in cracking of the films as well.  (Mahalek Decl. Ex. A, '557 patent, at Abstract and 2:19-25).  Importantly, the inventors came to realize that crack propagation could be minimized by dimensioning and patterning the mesas in a manner such that surfaces of the mesas would be oriented along "crack planes" of the group III-V nitride films.  (*Id.* at Abstract and 2:31-37).  The asserted claims of the '557 patent are directed to semiconductor structures having these novel features, as well as the method of forming such structures.

## III.    THE ACCUSED INSTRUMENTALITIES

Although claims are not construed to determine whether they cover an accused product, the Federal Circuit has emphasized that rulings on claim construction should be made with at least some knowledge of the accused product.  *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1350-1351 (Fed. Cir. 2006); *Lava Trading, Inc. v. Sonic Trading Mgmt., LLC*, 445 F.3d 1348, 1350 (Fed. Cir. 2006).  When the Court is deprived of the "vital contextual knowledge" of the accused process, claim construction runs the risk of taking on the attributes of an advisory opinion.  *Lava Trading*, 445 F.3d at 1350.  It is therefore entirely appropriate, if not necessary, for the Court to have a basic understanding of the accused instrumentalities which are at issue in this litigation.

In the case of Nichia, the accused instrumentalities consist of packaged semiconductor light-emitting diodes, commonly referred to as "LEDs", that Bluestone alleges to be infringing.  In the case of the other Defendants, the accused instrumentalities consist of consumer electronics (such as LED backlit televisions and monitors) that contain what Bluestone alleges to be infringing LEDs.  As a result of various reverse engineering processes that have been performed on representative samples of the accused instrumentalities, Bluestone alleges that each accused instrumentality (or each accused LED within an accused instrumentality) contains a plurality of projections (which Bluestone alleges to constitute "mesas" as claimed in the '557 patent) oriented in a hexagonal pattern on a sapphire substrate.  Bluestone also contends that an epitaxial film comprised of Gallium Nitride ("GaN") is deposited on the patterned

sapphire substrate that includes the aforementioned mesas.   Finally, Bluestone contends that the aforementioned hexagonal pattern corresponds to the hexagonal crystal lattice of the GaN epitaxial film, and that the mesas have surfaces oriented along certain planes, e.g., crack planes, of the GaN epitaxial film.   The images below show certain of these features in relation to one of the accused Nichia instrumentalities:

 

(Mahalek Decl. Ex. C, Nichia claim chart).  Should the Court wish to have greater context with respect to Bluestone's allegations pertaining to the accused instrumentalities, sample claim charts for an accused instrumentality of each Defendant are submitted herewith as Exhibits C though G to the Mahalek Declaration.

## IV.   APPLICABLE LEGAL STANDARDS

Claim construction is a question of law for the Court to decide.   *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-79 (Fed. Cir. 1995) (en banc).  Claims are to be interpreted in view of the intrinsic evidence – namely the language of the claims themselves, the specification, and the prosecution history.  *Id.* at 979.  The analytical focus of claim construction must begin with and remain centered on the language of the claims themselves.  *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001); see also, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms.").  Indeed, the language of the claims is of "paramount importance to claim construction." *E-Pass Techs., Inc. v. 3Com Corp.*, 473 F.3d 1213, 1220 (Fed. Cir. 2007).

There is a heavy presumption that a claim term carries its ordinary and customary meaning to persons of skill in the art at the time of the invention. *3M Innovative Prop. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1370 (Fed. Cir. 2003). Sometimes the ordinary meaning of a claim term can be readily apparent, in which case claim construction may involve "little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314. The context of surrounding words in the claim should also be considered in determining the ordinary and customary meaning of a disputed claim term. *Arlington Indus., Inc. v. Bridgeport Fittings, Inc.*, 345 F.3d 1318, 1325 (Fed. Cir. 2003). Ultimately, the proper construction for a claim term must align with the surrounding language of the claim itself:

> To construe the term "user" to mean a "computer" would result in the claim being interpreted to recite, for example, "enabling the software on a computer for use by a [computer]." The language of the claims does not reasonably or logically permit such a construction.

*Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1348 (Fed. Cir. 2007).

The claims must also be read in view of the specification, which has been described as "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315. The Court should never lose sight that while claims must be construed in light of the specification, limitations from the preferred embodiments or specific examples in the specification cannot be read into the claims. *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1276-77 (Fed. Cir. 2012); see also, *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1370 (Fed. Cir. 2008) ("[T]his court will not at any time import limitations from the specification into the claims."). The Federal Circuit has explained the reasoning behind this fundamental canon of claim construction:

> If everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims. Nor could an applicant, regardless of the prior art, claim more broadly than that embodiment … It is the claims that measure the invention.

*SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985). Thus, while the specification may be used to aid in the interpretation of the claims, it may not be used as a source for adding

1  extraneous limitations. *Eolas Techs., Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1337 (Fed. Cir. 2005).

2  This holds true even when a patent discloses only a single embodiment in the specification. *Gemstar-TV*

3  *Guide Int'l, Inc. v. ITC*, 383 F.3d 1352, 1366 (Fed. Cir. 2004); see also, *Linear Tech. Corp. v. Int'l Trade*

4  *Comm'n*, 566 F.3d 1049, 1058 (Fed. Cir. 2009) (the Federal Circuit has "repeatedly held that, even in

5  situations when only one embodiment is disclosed, the claims generally should not be narrowed to cover

6  only the disclosed embodiments or examples in the specification").

7      In addition to consulting the specification, the Court should also consider the patent's prosecution

8  history. *Phillips*, 415 F.3d at 1317. "[B]ecause the prosecution history represents an ongoing negotiation

9  between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the

10  clarity of the specification and thus is less useful for claim construction purposes." *Id.* "For this reason, it

11  is particularly important not to limit claim scope based on statements made during prosecution absent a

12  clear disavowal or contrary definition." *Digital-Vending*, 672 F.3d at 1276-77; see also *Omega Eng'g,*

13  *Inc. v. Raytek, Corp.*, 334 F.3d 1314, 1326 (Fed. Cir. 2003) (finding that prosecution history disclaimer

14  requires "disavowing actions or statements made during prosecution [which are] both clear and

15  unmistakable"). Thus, any disclaimer must be express, and not one that arises through mere inference.

16  *SunRace Roots Enter. Co., Ltd. v. SRAM Corp.*, 336 F.3d 1298, 1306 (Fed. Cir. 2003).

17      Finally, although the Federal Circuit has emphasized the importance of intrinsic evidence in claim

18  construction, it has also made clear that the Court may rely upon extrinsic evidence, such as expert and

19  inventor testimony, dictionaries, and learned treatises, to inform the proper construction of a disputed

20  claim term. *Id.* at 1317; see also, *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1306 (Fed. Cir. 2006)

21  (finding it "appropriate[] [to] look to dictionary definitions" when "the specification does not define the

22  [disputed] term" and "the specification's language does no more than describe preferred embodiments").

23  Extrinsic evidence may not be used to vary or contradict the otherwise unambiguous meaning of a claim

24  term. *Desper Prods., Inc. v. QSound Labs*, 157 F.3d 1325, 1333 (Fed. Cir. 1998).

25  **V.    BLUESTONE'S CLAIM CONSTRUCTION ARGUMENTS**

26      There are seven (7) disputed claim terms which the parties have asked the Court to construe.

27  They are: (1) mesa; (2) upstanding mesa; (3) a top surface; (4) film on the top surface of at least one

28

mesa; (5) crack planes of the epitaxial film; (6) the at least one mesa including surfaces oriented along crack plains; and (7) at least one mesa comprises a plurality of mesas.

### A. "mesa"

The parties' respective proposed constructions for the term "mesa" are as follows:

| Bluestone's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| projection | an elevated formation with a flat top and steep or vertical sidewalls |

(Doc. No. 353-1, at 2).  Claim 1 of the '557 patent recites "a substrate including at least one upstanding mesa." (Mahalek Decl. Ex. A, '557 patent at 8:64).   Neither the claims nor the specification of the '557 patent provide an express definition for the term "mesa."   It follows that the term "mesa" must be construed according to how one of ordinary skill in the art would have understood the term at the time of the invention.

The specification of the '557 patent teaches that the claimed "mesas" are projections that result from various techniques that may be employed to render a pattern into (or onto) a semiconductor substrate.  In this regard, the specification refers to "mesas patterned … on substrates such as sapphire substrates" (*Id.* at Abstract), and specifically teaches that the mesas: (1) can be formed by patterning any suitable substrate material (*Id.* at 6:40-41); (2) can be patterned in substrates using conventional lithography and etching techniques known in the art; (*Id.* at 6:62-64) and (3) can also be patterned on substrates using a suitable laser. (*Id.* at 7:1-2).  Figure 1 of the '557 patent illustrates a preferred embodiment of the invention, whereby the mesas (identified generally by reference item 10) have been patterned into a sapphire substrate (identified generally by reference item 20), and thus appear as upward projections from what remains of the sapphire substrate:



(*Id.* at FIG. 1 and 4:24-26).  Importantly, the specification expressly teaches that the mesas may take on a variety of different shapes, even aside from the "typical" shapes that may be illustrated and described in relation to the preferred embodiments of the invention:

> The mesas are ***typically*** polygonal shaped.  For example, the mesas ***can be*** rhombohedral or rectangular shaped.  In addition to the top surface, the mesas ***typically*** also include opposed end surfaces and opposed side surfaces.

(*Id.* at 2:27-30) (emphasis added).  So while the claimed mesas may be of a polygonal shape, and may include opposed end surfaces and opposed side surfaces, the specification makes clear that the invention is not limited to those particular configurations.  Indeed, the specification of the '557 patent is replete with non-restrictive descriptions of the mesas:

- The mesas ***can have various lengths*** depending on the purpose of devices fabricated on the mesas. (*Id.* at 2:47-48) (emphasis added).

- The mesas are ***typically longitudinally aligned and spaced from each*** other by a distance as small as about 4 microns.  (*Id.* at 2:58-59) (emphasis added).

- FIG. 1 illustrates a plurality of longitudinally aligned mesas 10 patterned on a sapphire substrate 20 ***according to an aspect*** of this invention.  (*Id.* at 4:24-26) (emphasis added).

- The mesas 10 and 110 ***can have various shapes***.  (*Id.* at 5:55) (emphasis added).

In short, the specification provides no express indication that the claimed mesas must be limited by way of shape or size.  Absent an express limiting definition, restriction or disclaimer, the term "mesa" must be construed broadly to reflect, from a structural standpoint, what a mesa is.  Bluestone's proposed construction is consistent with that framework, and is likewise consistent with the broad teachings set forth in the specification of the '557 patent.

Certain extrinsic evidence also makes clear that, in the pertinent field of art, the term "mesa" is used to refer generally to a variety of shapes, and not just to rectangular shapes of the type illustrated in the preferred embodiment of the '557 patent.  By way of example, U.S. Patent No. 4,133,925 makes reference to mesas having a trapezoidal cross section, as shown by reference numeral 12 of the illustration reproduced below:



(Mahalek Decl. Ex. H, U.S. Patent No. 4,133,925, at FIG. 2).  Even Defendant Nichia has used the term "mesa" to refer to trapezoidal-shaped structures.  (Mahalek Decl. Ex. I, EP 1 416 543 B1, at ¶ [0072], line 40) ("a mesa (=trapezoid)").  The term "mesa" is commonly associated with other shapes as well.  By further way of example, EP 1 620 902 B1 makes reference to mesas having a parabolic cross-sectional profile, as shown in the illustration and image reproduced below:




(Mahalek Decl. Ex. J, EP 1 620 902 B1, at FIG. 1 and FIG. 9; see also ¶ [0036], lines 34-35) (referring to "near-parabolic mesa" of FIG. 1).  Similarly, EP 1 280 190 A1 teaches that "no particular limitation is imposed on the shape of a mesa, so long as the area of a horizontal cross section of the mesa is increased in association with reduction in the distance between the cross section and the substrate."  (Mahalek Decl. Ex. K, EP 1 280 190 A1, at ¶ [0010], lines 3-7).  Consistent with that description, EP 1 280 190 A1 discloses triangular-prism shaped mesas, as well as "cone- or pyramid-shaped mesas."  (*Id.* at ¶ [0011], lines 13-17 and ¶ [0012], lines 23-27).  As the aforementioned extrinsic evidence demonstrates, one of ordinary skill in the art would not understand the term "mesa" to be restricted to a specific geometric shape.  Bluestone's proposed construction of the term "mesa" imports no such restrictions into the asserted claims.

In contrast, Defendants' proposed construction of the term "mesa" (*i.e.*, "an elevated formation with a flat top and steep or vertical sidewalls") improperly seeks to import limitations into the claims and thereby limit the claims to the preferred embodiments described in the patent specification.  The plain language of the claims does not require that the mesas be restricted to having "flat" tops and "steep or vertical sidewalls."  Nor does the specification of the '557 patent mandate any such restrictions on the scope of the claims.  To the contrary, the specification teaches that the mesas may take on a variety of shapes, as discussed above.  Absent some express indication from the patentee that the term "mesa" must be limited to a specific preferred embodiment illustrated in the patent, it would be improper to limit the scope of the term in the manner proposed by Defendants.  Defendants' proposed construction of the term "mesa" should be rejected for this reason alone.

It is also worth noting that Defendants' proposed construction results in a redundant and nonsensical reading of the claims, particularly when combined with Defendants' proposed construction for the term "a top surface", which is addressed in Section V.C below.  For instance, claim 1 of the '557 patent simply requires "a substrate including at least one upstanding mesa, each mesa having a top surface."  (Mahalek Decl. Ex. A, '557 patent, at 8:64-35).   Substituting Defendants' proposed constructions of the terms "mesa" and "a top surface" yields the following result:

> A substrate including at least one upstanding [mesa] <u>elevated formation with a flat top and steep or vertical sidewalls</u>, each [mesa] <u>elevated formation with a flat top and steep or vertical sidewalls</u> having [a top surface] <u>a flat top of a [mesa] elevated formation with a flat top and steep or vertical sidewalls providing a reduced growth area dimensioned such that it reduces stress and associated cracking of the epitaxial film</u>.

Defendants' convoluted and wordy interpretation of the disputed claim language is motivated by Defendants' non-infringement contentions, finds no support in the intrinsic evidence of record, and should accordingly be rejected.   See, e.g., *Z4 Techs.*, 507 F.3d at 1348 (rejecting proposed claim construction where "the language of the claims does not reasonably or logically permit such a construction").

**B.       "upstanding mesa"**

The parties' respective proposed constructions for the term "upstanding mesa" are as follows:

| Bluestone's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| upright projection | a mesa with vertical sidewalls perpendicular to the substrate |

(Doc. No. 353-1, at 21).  Bluestone incorporates by reference herein its arguments presented in Section V.A above in relation to the disputed term "mesa."  Claim 1 of the '557 patent recites "at least one ***upstanding*** mesa," while asserted claim 23 simply refers to "at least one mesa."  (Mahalek Decl. Ex. A, '557 patent, at 8:64 and 10:21).  Different claim terms are presumed to have different meanings.  *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012); *Bd. Of Regents of the Univ. of Tex. Sys. v. BenQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008).  This begs the question – what makes a mesa different from an "upstanding" mesa?

The language of the claims is effectively silent on this point.  The specification of the '557 patent likewise provides no definitive instructions on this point, other than to make clear that the mesas illustrated in the preferred embodiment of the invention qualify as "upstanding" mesas.  (Mahalek Decl. Ex. A, '557 patent, at 4:26) (referring to "mesas 10" as being "upstanding").  The prosecution history of the '557 patent, however, provides a clear and succinct answer to the question at hand.  In the context of an Office Action, which  included an examiner's restriction requirement, along with the patentee's subsequent election of subject matter in relation thereto, the United States Patent & Trademark Office stated:

> In the instant case the structure as claimed can be fabricated on a mesa which is not upstanding, i.e. ***at an angle other than normal to the substrate***.

(Mahalek Decl. Ex. L, Office Action (Election/Restriction) dated September 15, 1999, at 2) (emphasis added).  It follows that the shape of an "upstanding" mesa must be normal to the substrate, while a mesa that is not necessarily "upstanding" bears no such restriction.[1]  Importantly, the word "upstanding" is intended to describe the overall shape of the claimed mesa, as opposed to the specific shape of any side walls that the mesa may have.  This distinction is illustrated below:

---

[1] This distinction provides yet another basis as to why Defendants' proposed construction of the term "mesa" is improper.  The Patent Office made clear that, in its view, the term "mesa" was not limited to geometric shapes having "steep or vertical sidewalls," as proposed by Defendants.



upstanding mesa
on substrate



mesa on substrate

Thus, the term "mesa" is the generic term for a projection, while "upstanding mesa" is a species of the term "mesa."  With respect to the mesa illustrated in the image on the left, although the side walls of the mesa are not normal to the substrate, the overall shape of the mesa is still upright in nature, and thus, "upstanding" (*i.e.*, normal) in relation to the illustrated substrate.   In contrast, the image on the right shows an example of a mesa that would not qualify as being "upstanding," as its overall shape is not normal or upright in relation to the illustrated substrate.  Bluestone's proposed construction of the term "upstanding mesa" is consistent with the aforementioned interpretation of the claims, as guided by the applicable intrinsic evidence.

Defendants' proposed construction of the term "upstanding mesa" is improper for the very same reasons discussed above in relation to the term "mesa."   The intrinsic evidence provides no basis to import limitations disclosed in relation to the preferred embodiment of the invention into the claims. See, e.g., *Linear Tech*, 566 F.3d at 1058 (the Federal Circuit has "repeatedly held that, even in situations when only one embodiment is disclosed, the claims generally should not be narrowed to cover only the disclosed embodiments or examples in the specification").  Defendants' proposed construction of the term "upstanding mesa" should accordingly be rejected.

C.     "a top surface"

The parties' respective proposed constructions for the term "a top surface" are as follows:

| Bluestone's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| uppermost 2-dimensional locus of points | the flat top of a mesa providing a reduced growth area dimensioned such that it reduces stress and associated cracking of the epitaxial film |

1

2   (Doc. No. 353-1, at 32).  The specification of the '557 patent makes clear that a "top surface" of a mesa is

3   the uppermost surface of the mesa with reference to the structure on which the mesa is formed (in the

4   case of asserted claims 1 and 23, that structure being the claimed substrate).  In relation to a preferred

5   embodiment of the invention, the specification describes and illustrates the location of such a top surface

6   (referenced as item 16) with reference to Figure 1 of the patent, shown below:

7

8

9

10                                          

11

12

13

14   (Mahalek Decl. Ex. A, '557 patent, at FIG. 1 and 4:24-30).  Bluestone's association of the word

15   "uppermost" with the word "top" is consistent with this intrinsic evidence, and is also consistent with the

16   plain and ordinary meaning of the word "top" as used in the claimed context, as in the "top of a

17   mountain," or the "top floor of a building."  Defendants themselves point to extrinsic evidence, which

18   demonstrates this point.  (Dkt. No. 353-1, at 33) (Defendants' cited definition of "top" as "the highest

19   point, level or part of something.").  As such, there does not appear to be much debate between the

20   parties as to how the word "top" should properly be interpreted.

21          The heart of the parties' dispute instead focuses of whether the claimed "top surface" must be a

22   flat surface.  Bluestone does not dispute that the specification of the '557 patent, in reference to the

23   preferred embodiments of the inventions, illustrates mesas having top surfaces which are flat.  But

24   nowhere does the specification of the '557 patent (or the language of the claims themselves) define, limit,

25   or otherwise restrict the invention to mesas of that specific type.  To the contrary, as discussed in Section

26   V.A above, the specification teaches that the claimed mesas may take on a variety of shapes and

27   configurations.   Absent an express limiting definition, restriction or disclaimer, the term "top surface"

28   must be construed broadly to reflect, from a structural standpoint, what a "top surface" is.

The plain and ordinary meaning of the word "surface" is not limited to flat, planar boundaries.  In this regard, Bluestone brings to the Court's attention the following definitions of the term "surface":

- The two-dimensional locus of points located in three-dimensional space.  (Mahalek Decl. Ex. M)

- A plane or curved two-dimensional locus of points (as the boundary of a three-dimensional region). (Mahalek Decl. Ex. N)

Bluestone's proposed construction of the term "top surface" is consistent with the aforementioned evidence – both intrinsic and extrinsic – and does not seek to import extraneous limitations into the asserted claims.

In contrast, Defendants' proposed construction of the term "top surface" (*i.e.*, "the flat top of a mesa providing a reduced growth area dimensioned such that it reduces stress and associated cracking of the epitaxial film") improperly seeks to import limitations into the claims.  The plain language of the claims does not require that the mesas be restricted to having "flat" tops, nor does the specification of the '557 patent mandate any such restriction.  Moreover, the term "top surface" is a structural claim limitation which should properly be interpreted according to what the structure is, as opposed to what the structure does or is capable of doing.  Extraneous functional limitations of the sort proposed by Defendants (*i.e.*, that the top surface "provide a reduced growth area ***such that it reduces stress and associated cracking*** of the epitaxial film") are improper.  See, e.g., *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) ("Where the function is not recited in the claim itself by the patentee, we do not import such a limitation."); *Transmatic, Inc. v. Gulton Indus., Inc.*, 53 F.3d 1270, 1278 (Fed. Cir. 1995) (holding that the district court erred by importing functional limitations into a structural claim element because functions that are not recited in a claim are not legally relevant to the literal language of the claim).  Defendants' proposed construction of the term "top surface" should accordingly be rejected.

### D.      "film on the top surface of at least one mesa"

The parties' respective proposed constructions for the term "film on the top surface of at least one mesa" are as follows:

| Bluestone's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| film deposited on the top surface of at least one mesa | film grown on the reduced growth area of at least one mesa wherein the film edges are proximate to the edges of the top surface of each such mesa |

(Doc. No. 353-1, at 44). The parties do not appear to dispute that the term "film on the top surface of at least one mesa" means, at a minimum, exactly what it says – that the claimed "film" must be grown on the top surface of at least one mesa. Bluestone's substitution of the word "deposited" for "grown" should not be controversial, as the specification of the '557 patent makes use of the terms interchangeably, a point which Defendants' themselves should recognize. For example, in support of their proposed construction, Defendants' cite to a portion of the specification which states that "[e]xperiments of GaN epitaxial film *growth* on the sapphire mesas show that GaN films can be grown with free sidewalls. That is, GaN *deposited* only on the top surfaces of the mesas and did not deposit on the sidewalls of the mesas." (Mahalek Decl. Ex. A, '557 patent, at 8:44-47) (emphasis added). Bluestone submits that this is where the claim construction process should end.

In contrast, Defendants once again propose that additional, extraneous limitations be imported into the asserted claims. But the plain language of the claims does not require that the film that is grown on the top surface of the mesas have "edges [that] are proximate to the edges of the top surface of each such mesa." Nor does the specification of the '557 patent mandate any such a restriction. In fact, in relation to a preferred embodiment of the invention, the specification describes and illustrates, with reference to Figure 6 (shown below), a film (referenced as item 76) grown over a mesa (referenced as item 74), wherein the film *does not* have "edges [that] are proximate to the edges of the top surface of each such mesa":



(*Id.* at FIG. 6 and 8:14-24).  A claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct.  *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1138 (Fed. Cir. 2004); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).  Here, Defendants' proposed construction does precisely that.  Defendants' proposed construction of the phrase "film on the top surface of at least one mesa" should accordingly be rejected.

**E.      "crack planes of the epitaxial film"**

The parties' respective proposed constructions for the term "crack planes of the epitaxial film" are as follows:

| Bluestone's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| preferential cleavage planes of the epitaxial film | planes on which the epitaxial film would most likely crack during the growth process, which are the m-planes of the hexagonal gallium nitride and aluminum gallium nitride crystals |

(Doc. No. 353-1, at 77).  The parties' respective constructions for "crack planes of the epitaxial film" are similar and do not reflect a fundamental disagreement about what a "crack plane" is and what its effect is upon the semiconductors structures discussed in the '557 patent.  In fact, the first portion of Defendants' proposed construction, "planes on which the epitaxial film would most likely crack during the growth process," would be an acceptable alternative construction for "crack planes of the epitaxial film."  It is the remainder of Defendants' proposed construction that should be rejected as it improperly imports limitations from the specification into the claims.  On the other hand, Bluestone has proposed a construction for "crack planes" that is not limited to a specific embodiment of the '557 patent.  Bluestone's proposed construction of the term "crack planes" encompasses all the planes upon which cracks may occur as a result of growing a Group III-V epitaxial film on a substrate.  Bluestone agrees that "m-planes" (as referenced in the specification of the '557 patent) are crack planes, but a proper claim construction of this phrase should not be limited solely to such "m-planes."  Crack planes may also include m-planes, a-planes, c-planes, and r-planes, among others.  Figure 3 of the '557 patent, reproduced below, demonstrates several of the different crystalline planes of GaN.  The m-planes are identified as

items 91-96.  (Mahalek Decl. Ex. A, '557 patent, at 4:40-60).   The c-plane and a-plane are also shown in

Figure 3.  Figure 2 of the '557 patent, also reproduced below, depicts an exemplary r-plane (item 83), an

a-plane (item 81), and a c-plane (item 82). (*Id.* at 4:34-40).



(*Id.* at FIG. 3 and FIG. 2).  Defendants, on the other hand, have improperly limited their proposed

construction of the term "crack planes" to m-planes.

Defendants' proposed construction for the "epitaxial film" portion of this phrase is also improper

for the same reason.  The '557 patent makes clear that the only requirement for the epitaxial film is that it

must be comprised of Group III-V elements.

- This invention is directed to structures comprising improved group III-V nitride films ("III-V nitride films") grown on substrates for use in short-wavelength visible light emitting optoelectronic devices, including light emitting diodes (LEDs) and diode lasers. (*Id.* at 3:41-45)

- The III-V nitrides comprise group III and V elements of the periodic table. The III-V nitrides can be binary compounds, as well as ternary and quarternary alloys. (*Id.* at 3:50-52)

- According to another aspect of this invention, the problem of cracking ***in the III-V nitride films*** grown on substrates is significantly reduced or eliminated by growing ***III-V nitride films*** on mesas.  The mesas provide reduced area surfaces on which ***the III-V nitride films*** are epitaxially grown.  (*Id.* at 4:13-17) (emphasis added)

The '557 patent does not disavow or disclaim all epitaxial films other than gallium nitride or aluminum

gallium nitride as suggested by Defendants' proposed construction.   For the foregoing reasons, Defendants' proposed construction for "crack planes of the epitaxial film" is improper and should be rejected.

**F.      "the at least one mesa including surfaces oriented along crack planes"**

The parties' respective proposed constructions for the term "the at least one mesa including surfaces oriented along crack planes" are as follows:

| Bluestone's Proposed Construction | Defendants' Proposed Construction |
| --- | --- |
| the at least one mesa including at least two 2-dimensional loci of points aligned with preferential cleavage planes | each such mesa includes at least two flat sidewalls each parallel to a crack plane |

(Doc. No. 353-1, at 63).   Defendants' proposed construction for this phrase is improper for the same reasons that Defendants' proposed construction of the terms "mesa" (flat top and steep or vertical sidewalls) and "upstanding mesa" (vertical sidewalls perpendicular to the substrate).   See Sections V.A and V.B, above.   In fact, Bluestone cannot even reconcile the "mesa" of this phrase which Defendants argue should have flat sidewalls with the earlier use of "mesa" that Defendants contend must have steep or vertical sidewalls.   Both uses of "mesa" occur in claim 1 of the '557 patent and "mesa" should be construed to mean the same thing in both instances.

Setting aside Defendants' inconsistent proposed constructions of "mesa" for a moment, Defendants' proposed construction must be rejected for other reasons as well.   First, there is no requirement in the claims or the specification of the '557 patent that the "surfaces" which are oriented along crack planes must be flat sidewalls.   Oddly, none of the definitions for "surface" cited by Defendants as extrinsic evidence support the notion that the surfaces must have flat sidewalls.   As set forth above (see Section V.A), there is no restriction to the shape of the mesas such that they have to have flat sidewalls.   To the contrary, the '557 patent makes clear that the mesas may take on a variety of different shapes and is not limited to the "typical" shapes illustrated and described in relation to the preferred embodiments.   (Mahalek Decl. Ex. A, '557 patent, at 2:26-29).   Contrary to Defendants' proposed construction, the inventors used the term "surface" in the plain and ordinary sense in claim 1 of

the '557 patent. Bluestone's extrinsic evidence forms the basis for its understanding of "surface" and is consistent with its proposed construction for "top surface," as discussed in Section V.C above:

- Surface: The two-dimensional locus of points located in three-dimensional space. (Mahalek Decl. Ex. M)

- Surface: A plane or curved two-dimensional locus of points (as the boundary of a three-dimensional region). (Mahalek Decl. Ex. N)

Second, Defendants' proposal, which requires the mesa surfaces to be parallel to a crack plane, is improper. The inventors utilized the word "oriented" in its plain and ordinary sense in claiming this inventive aspect of the '557 patent. Bluestone has provided dictionary definitions consistent with its use of "align" in its proposed construction:

- Orient: To align or position with respect to a point or system of reference. (Mahalek Decl. Ex. O)

- Orient: To align or position with respect to a reference system. (Mahalek Decl. Ex. P)

Notably, not one of the dictionary definitions relied upon by Defendants as extrinsic evidence defines the word "orient" as "parallel." (See Dkt. No. 353-1, at 63-64).

Finally, Defendants' proposed construction is improper because it requires that the surfaces of the mesas must be oriented along a single crack plane. This flies in the face of, and attempts to improperly re-write, the claim language. The plain language of the claim states "the at least one mesa including surfaces oriented along crack plane**s**." The specification is in accord: "The mesas can be oriented such that surfaces of the mesas are oriented along crack planes of the films, such as the m-planes of GaN or AlGaN films." (Mahalek Decl. Ex. A, '557 patent, at 2:34-37). Had the inventors wished to limit the invention to an embodiment where the mesas surfaces were oriented along a single crack plane, they would have done so by drafting the claims differently. Bluestone's proposed construction is the proper one because it is consistent with the plain claim language, the specification, and relevant extrinsic evidence.

### G. "at least one mesa comprises a plurality of mesas"

The parties' respective proposed constructions for the term "at least one mesa comprises a plurality of mesas" are as follows:

| Bluestone's Proposed Construction | Defendants' Proposed Construction |
|---|---|
| "at least one mesa" should be construed as "one or more mesas" and "a plurality of mesas" should be construed as "two or more mesas" | Defendants contend that this term is indefinite because a person of ordinary skill in the art reading the '557 patent would not understand what is meant by "at least one mesa comprises a plurality of mesas."  If construing this term to preserve the validity of claim 9, which Defendants assert is improper, then "at least one mesa comprises a plurality of mesas" means "the substrate includes more than one upstanding mesa." |

(Doc. No. 353-1, at 94).  Claim 9 of the '557 patent, which depends from claim 1, recites "the structure of claim 1, wherein the at least one mesa comprises a plurality of mesas spaced from each other by a distance of less than about 50 microns."  (Mahalek Decl. Ex. A, '557 patent, at 9:35-37).

Bluestone submits that the terms "at least one" and "plurality" should be given their plain and ordinary meaning as is typical of patent claim drafting parlance.  In this regard, the phrase "at least one" is typically construed to mean "one or more."  See, e.g., *Biagro W. Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1304 (Fed. Cir. 2005) ("The phrase 'at least one' in patent claims typically is construed to mean 'one or more.'"); see also, *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1344 (Fed. Cir. 2008) ("The femoral component must include 'at least one condylar element,' which the district court correctly understood to mean 'one or more.'"); *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999) ("Use of the phrase 'at least one' means that there could be only one or more than one."). The term "plurality," on the other hand, is typically construed to mean "two or more."  See, e.g., *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1348 (Fed. Cir. 2013) ("The district court correctly assessed that a plurality simply means two or more."); see also, *Dayco Prods. v. Total Containment, Inc.*, 258 F.3d 1317, 1327-28 (Fed. Cir. 2001) ("In accordance with standard dictionary definitions, we have held that 'plurality,' when used in a claim, refers to two or more items, absent some indication to the contrary.") (citing *York Prods., Inc. v. Cent. Tractor Farm & Family Ctr.*, 99 F.3d 1568, 1575 (Fed. Cir. 1996)).

Defendants have yet to articulate any basis as to why the words "at least one" and "plurality" should carry any meaning aside from their plain and ordinary meaning.  Nor have Defendants articulated any basis (or provided any evidence) to support the notion that "a person of ordinary skill in the art

reading the '557 patent would not understand what is meant by "at least one mesa comprises a plurality of mesas."  To the extent that the Defendants might be basing their assertion of indefiniteness on the transitional phrase "comprises," Bluestone submits that one of skill in the art would understand the phrase "at least one mesa comprises a plurality of mesas" to mean that in this particular instance (*i.e.*, in relation to dependent claim 9), the group of "at least one mesa" referenced in independent claim 1 must contain of at least two mesas.

## VI. CONCLUSION

Bluestone's proposed constructions are consistent with the plain and ordinary meaning of the claims themselves and are supported by the evidence or record, both intrinsic and extrinsic.  For all of the foregoing reasons, Bluestone requests that the Court adopt Bluestone's proposed constructions in their entirety.

Dated: February 14, 2014

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

Martin L. Fineman, Bar No. 1104413
One Embarcadero Center, Suite 600
San Francisco, CA 94111-3611
415-276-6575 (tel)
415-276-6599 (fax)

NIRO, HALLER & NIRO

Dean D. Niro
David J. Mahalek
Robert A. Conley
Oliver D. Yang
181 West Madison St
Suite 4600
Chicago, IL 60602
(312) 377-3278 (tel)
(312) 236-3137 (fax)

By: */s/ David J. Mahalek*

***Attorneys for Plaintiff***
***Bluestone Innovations, L.L.C.***

**CERTIFICATE OF SERVICE**

I certify that all counsel of record in *Bluestone Innovations LLC* v. *Nichia Corp., et al.*, Case No. 3:12-cv-00059-SI (N.D. Cal.) and *Bluestone Innovations LLC* v. *LG Elecs., Inc., et al.*, Case No. 3:13-cv-01770-SI (N.D. Cal.) are being served on February 14, 2014 with a copy of this document via the Court's CM/ECF system at the email addresses below:

**Martin J. Fineman**
Davis Wright Tremaine LLP
martinfineman@dwt.com

**Dean D. Niro**
Niro, Haller & Niro
dniro@nshn.com

**David J. Mahalek**
Niro, Haller & Niro
Mahalek@nshn.com

**Robert A. Conley**
Niro, Haller & Niro
rconley@nshn.com

**Oliver D. Yang**
Niro, Haller & Niro
oyang@nshn.com

**Brian P. Egan**
Paul Weiss Rifkind Wharton & Garrison - NY
began@paulweiss.com

**Diane C. Gaylor**
Paul Weiss Rifkind Wharton & Garrison – DC
dgaylor@paulweiss.com

**J. Brian Hart, Jr.**
Paul Weiss Rifkind Wharton & Garrison – DC
bhart@paulweiss.com

**Catherine Nyarady**
Paul Weiss Rifkind Wharton & Garrison – NY
cnyarady@paulweiss.com

**Adrian M. Pruetz**
Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP
apruetz@glaserweil.com

**Charles C. Koole**
Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP
ckoole@glaserweil.com

**Steven R. Hansen**
Lee Tran Liang & Wang LLP
Steven.hansen@ltlattorneys.com

**Peter H. Kang**
Sidley Austin LLP
pkang@sidley.com

**Ashish Nagdev**
Sidley Austin LLP
anagdev@sidley.com

**Philip Woo**
Sidley Austin LLP
pwoo@sidley.com

**Jerry Chen**
Freitas Tseng & Kaufman LLP
jchen@ftklaw.com

**Kaiwen Tseng**
Freitas Tseng & Kaufman LLP
ktseng@ftklaw.com

**Bryan James Mechell**
Robins, Kaplan, Miller & Ciresi, LLP
bjmechell@rkmc.com

**Christopher Kenneth Larus**
Robins, Kaplan, Miller & Ciresi, LLP
cklarus@rkmc.com

**Wesley Wei-Liang Lew**
Robins, Kaplan, Miller & Ciresi, LLP
wwlew@rkmc.com

*/s/ David J. Mahalek*
DAVID J. MAHALEK